**REISSUED FOR PUBLICATION**
JUN 15 2020
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-626V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | Chief Special Master Corcoran |
| JESSICA PLOUGHE, *natural mother and guardian of S.P., a minor*, | * * * | |
| | * | Filed: May 6, 2020 |
| Petitioner, | * * | |
| v. | * * | Rash; Onset; Developmental delay and autism injuries; |
| SECRETARY OF HEALTH AND HUMAN SERVICES | * * * | Litigation costs; Expert opinion |
| Respondent. | * * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Jessica Ploughe*, Ridgeville, SC, *pro se* Petitioner.

*Christine Becer*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS[1]

On July 18, 2014, Jessica Ploughe filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] alleging that her daughter, S.P., experienced an allergy, chronic/recurrent rash, and associated gastrointestinal problems attributable to several vaccines she received on July 22, 2011. Petition ("Pet.") (ECF No. 1) at 1. The parties acceded to my determination that the matter could appropriately be resolved by a ruling

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

on the record. After reviewing of all submissions in the case, I denied an entitlement award. Decision, filed on February 18, 2020 (ECF No. 113).

Before the claim's dismissal, Petitioner (who became a *pro se* litigant in the course of proceedings)[3] had filed a motion requesting an award of costs for an expert opinion she had obtained to support the claim. Motion for Costs, filed on April 29, 2019 (ECF No. 108) (requesting $10,095.00 in expert costs). Respondent resisted the motion, but largely on the grounds that an interim award of costs was not appropriate. Response to Costs Mot., filed on May 13, 2019 (ECF No. 109). Respondent did not otherwise object to an award of costs, and deferred resolution of the issue to my discretion. *Id.* at 2–4.

For the reasons below I GRANT IN PART Petitioner's motion.

## BACKGROUND

Mrs. Ploughe's initial petition (prepared for her by former counsel) alleged that S.P. suffered from gastrointestinal problems and papular rash because of the seven vaccines she received on July 22, 2011. Pet. at 1. Within the Petition, however, was an allegation that could be read as also arguing that S.P.'s developmental issues were attributable to these vaccines. *Id.* at 4 ¶ 23. For roughly the next year after the case's initiation, Petitioner filed medical literature and records to support her claim. On October 27, 2015, Petitioner filed an amended petition ((ECF No. 41) ("Amended Petition")), adding the allegations that S.P. suffered a Table injury following her receipt of the varicella vaccine. Amended Petition at 1.

Initial expert reports were filed between December 2015 and the spring of 2016. Thereafter, Special Master Roth (to whom the case was originally assigned) encouraged the parties to informally resolve the dispute. These efforts were unsuccessful, and eventually former counsel withdrew from the matter, leaving Ms. Ploughe to continue as a *pro se* litigant. In support of the claim, Petitioner filed an expert report from Dr. Allan Lieberman early 2019. I was assigned to this case in mid-February 2019. (ECF No. 104). Shortly thereafter, Petitioner filed a motion requesting payment of $10,097.00 in costs associated with retaining and consulting with Dr. Lieberman on his report. Motion for Costs at 1–3. Respondent resisted the motion on the grounds that it was an interim request and that Petitioner had not satisfied the requirements for an award of interim fees and costs. Response to Costs Mot. at 1–2.

---

[3] Petitioner's original counsel withdrew from the matter in 2018, and received around that time an award of fees associated with work on the case. Fees Decision, dated April 19, 2018 (ECF No. 87).

As noted above, the claim was dismissed earlier this winter, and Petitioner did not appeal my determination. This leaves only the resolution of the long-pending costs request. Petitioner has not asked for reimbursement of any other costs associated with this matter.[4]

**ANALYSIS**

**I.      Petitioner's Claim had Reasonable Basis**

Petitioners who do not succeed in their Vaccine Act claim can under appropriate circumstances still receive awards of fees and/or costs. I have in prior decisions set forth at length the criteria to be applied under such circumstances, which involve evaluating whether the unsuccessful claim possessed "reasonable basis" for its prosecution. *See, e.g.*, *Sterling v. Sec'y of Health & Human Servs.*, No. 16-551V, slip op. at 5 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith, which is the other element for a fees award when a claim is unsuccessful). *Id.* Reasonable basis inquiries are not static, nor do they only analyze when the petition was filed; instead reasonable basis is considered when the petition is filed, but is revisited as the case progresses. *See Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they reviewed their expert's opinion which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 77 (Fed. Cl. 2019). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[5] The Court of Federal Claims has affirmed that the "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that

---

[4] The present motion was originally deemed an "interim" request, given that the case had not yet concluded. Now, because I have issued a decision denying entitlement, I am treating Petitioner's motion for costs as final—although Petitioner technically still has 180 days after the entry of judgment (which occurred on March 20, 2020) to request any other fees and costs not yet awarded.

[5] *See also Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014) (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

should be considered. *Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017).

Although Petitioner was not successful in pursuing her claim, I find that the matter had sufficient reasonable basis to justify a final award of costs. I do not doubt that Ms. Ploughe brought her claim in the good-faith belief that vaccinations played a causal role in S.P.'s injuries. In addition, I find that the claim possessed sufficient objective support to meet the second half of the reasonable basis test, and Respondent has not otherwise offered any argument that the claim lacked reasonable basis. Accordingly, an award of costs is proper.

## II.     Calculation of Proper Costs Award in this Case

A petitioner must also demonstrate that requested litigation costs are reasonable in order to receive them. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (Fed. Cl. 2002). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner hired several experts in this matter, but only requests costs associated with Dr. Lieberman's expert report. Mot. for Fees and Costs at 1–3. Dr. Lieberman requests $375 per hour for work performed on this matter. *Id.* at 2. This is below the top hourly rate ($500 per hour) presently reserved for only the most qualified experts with significant experience testifying in the Program. *See, e.g.*, *Anderson*, 2017 WL 2927044, at *3 (lowering hourly rate from $500 to $400 when expert did not have significant experience in program); *Lozano*, 2017 WL 6942528, at *3 (stating that $500 per hour is "at the high end of the rate range paid to experts."). Dr. Lieberman has very little experience testifying in the Program—in fact he appears to have only testified in a Program case once before. *See Tedeschi v. Sec'y of Health & Human Servs.*, No. 02-1826V, 2016 WL 4266046 (Fed. Cl. Spec. Mstr. July 21, 2016). However, in light of Dr. Lieberman's professional experience as reflected in his report, I find that his requested rate is reasonable.

Although I approve of Dr. Lieberman's requested rate, I am less than impressed by his work product and the time he took to produce it. Mot. for Costs at 2 (billing 25 hours for Dr. Lieberman's expert report). His report was disjointed and failed to offer a cohesive theory of causation. *See generally* Lieberman Rep. at 1–5. For instance, he rapidly moved between several subjects unrelated to each other without transition, and without linking the injuries or symptoms to vaccination. *See id.* at 2–4 (asserting that S.P. has autism, claiming that Petitioner was wrongly

accused of Munchausen's syndrome by proxy[6], addressing the number of Autism Spectrum Disorder claims denied in the Program, and requesting that "[S.P.] be included in 80% of all Compensation awarded by VICP that comes as a result of a NEGOTIATED SETTLEMENT . . . ."). He also spent a significant amount of his report opining that S.P. suffered from developmental delay—an injury he is aware that Petitioner did not allege, and which is only rarely the basis for a successful vaccine injury. *See id.* at 2. Dr. Lieberman's report comes across as an incoherent stream of consciousness rather than a reasoned expert report, at least with respect to the main matters in contention.

Ultimately, although I agree that some of Dr. Lieberman's time should be compensated, it was unreasonable for him to have spent more than 25 hours to produce the report that was filed. Accordingly, I will only compensate him for half the total time requested.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs, even in unsuccessful cases. Section 15(e). Accordingly, I hereby GRANT IN PART Petitioners' Motion for costs. I award a total of **$5,048.50** as a lump sum in the form of a check jointly payable to Petitioner and Dr. Allan D. Lieberman. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] "[A] form of factitious disorder in which one person intentionally fabricates or induces signs and symptoms of one or more physical *(Munchausen syndrome by proxy)* or psychological disorders in another person under their care and subjects that person to needless and sometimes dangerous or disfiguring diagnostic procedures or treatment, without any external incentives for the behavior. The dyad is usually that of mother and child." Factitious Disorder By Proxy, Dorland's Medical Dictionary Online, https://www.dorlandsonline.com/dorland/definition?id=71111 (last visited April 24, 2020) (emphasis added).

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

5